IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA      )
              )
    v.                 )        Cr. No. 2:06-CR-271-WKW
              )
COREY HARVEY         )

RESPONSE TO MOTION TO SUPPRESS

Comes now the United States of America, by and through Leura Garrett Canary, United

States Attorney for the Middle District of Alabama, and respectfully responds to defendant's Motion

to Suppress, and offers the following:

**Facts**

1.      On or about November 1, 2005, Detective Robert Steelman of the

Montgomery Police Department (MPD) and Special Agent Neil Thompson of the Drug Enforcement

Agency (DEA) informed Scott Edwards of the High Intensity Drug Task Force (HIDTA) and MPD

that they had received information from a confidential source (CS) that Preston Grice (Grice), who

drove an older model black truck, was storing and distributing a large quantity of cocaine from an

address on Holcombe Street, later identified as 589 Holcombe Street. The CS also stated that a

person known as Corey (later identified as Corey Harvey), who drove a gold Chevrolet Caprice was

also distributing cocaine from that residence. The CS further stated that "Bunky" later identified as

Leenandora Woods (Woods) was at the residence, drove a black Cadillac and was involved in the

distribution of cocaine from the residence.

2.      Armed with the information, and after running a search through law

enforcement databases and determining that Grice had prior convictions for trafficking in narcotics

and Detective Steelman verifying the physical descriptions given by the CS, officers set up surveillance at the residence and observed Woods' black Cadillac in the driveway, and Grice's black truck parked on the street in front of the house in the street. Officers watched Woods walking out of the house carrying an object (possibly a plastic bag), enter the black Cadillac, place his foot on the brake for a period of time and then leave. Steelman radioed Detective Mike Drummond and told him of his observations.

3.      Sergeant Mike Drummond (Drummond) of MPD observed the black Cadillac as it passed him at the intersection of South and Holcombe Streets. Based on his observation, Drummond believed that the window tint on the vehicle was too dark and that the vehicle was moving at a high rate of speed. Drummond then radioed in for a patrol unit to stop the vehicle. Corporal C. Mills (Mills) answered the call and stopped the black Cadillac in the 2400 block of Lark Street. Mills requested the driver provide his driver's license and proof of insurance. The driver (Woods) advised that his driver's license was suspended. Mills asked the driver to exit the vehicle and conducted a pat down for officer's safety. Mills obtained Woods' personal information and radioed in to begin a warrant and "wanted" check on him. While waiting for a return of information Mills asked Woods if there were any weapons in the vehicle and Woods told Mills that he could search the vehicle. Mills then began a search of the car and was later joined by a K-9 team consisting of MPD Detective Tommy Conway (Conway) and "Luke". "Luke", while in the vehicle, alerted to the presence of narcotics in the area of the Cadillac's center console. "Luke" was secured and Conway returned to the vehicle, turned the ignition switch, placed his foot on the brake and placed the vehicle in neutral. Woods then fled the area, was tazered, secured and placed in custody. Conway lifted the center console and retrieved a plastic bag containing approximately 454 grams of cocaine

2

base (crack), a clear plastic bag with 140 grams cocaine powder and from underneath the console

a clear plastic bag with 25 grams of marijuana. Mills then receives a radio transmission supplying

him with the information on Woods requested earlier. Woods was transported to the Special

Operations Division of MPD where he refused to make a statement to officers but did say words to

the effect that he had done the crime and would have to do the time.

4.      After Woods left the residence, Lieutenant Robert Caviness (Caviness)

continued surveillance on 589 Holcombe. Caviness observed Harvey come and go from the

residence. Through experience and training, Caviness believed that Harvey maintained control of

the residence and never strayed far from the house. Caviness observed Harvey walking back and

forth from 576 Holcombe to 589 Holcombe. Harvey would sit on the porch of 579 Holcombe or

would walk into the street, approaching oncoming vehicles and would stop and briefly speak with

the vehicles' occupant(s). The vehicles would then leave. Harvey was also observed talking with

pedestrians passing by or loitering in the area.

5.      At approximately 1:15 pm officers observed a black Ford Escort leave the

residence. A black male and black female occupied the Escort with the male being the driver.

Officers maintained surveillance of the vehicle until a traffic stop was attempted be a marked police

vehicle. Once the marked police vehicle activated its emergency lights, the vehicle refused to stop,

running a stop sign and continuing. As officers followed, a large quantity of marijuana

(approximately 210 grams) was thrown out the passenger side of the vehicle. The vehicle was

eventually stopped and the occupants were arrested, taken into custody and transported to the Special

Operations Division of MPD..

6.      While the Escort was being pursued, Caviness had continued surveillance

on Holcombe Street. Caviness watched as a black male exited 589 Holcombe Street and enter into

a black mini-van on the driver's side. Officers initiated a stop of the mini-van and the occupants

(Preston Grice - driver and  Nathaniel Wright- passenger) were arrested and taken to the Special

Operations Division of MPD.

   7.  When Woods was arrested, Steelman went to the Special Operations

Division and began drafting a search warrant with the aid of Detective Bill Hamil (Hamil). As

surveillance continued and vehicles were stopped, officers would relay information to Steelman and

Hamil. During the relaying of information it was reported that Grice was the driver of the Escort.

   8.  Sometime before 2:30 pm, Montgomery Municipal Court Judge Troy Massey

signed the search warrant requested by Steelman. At approximately 2:30, the search warrant was

executed at 589 Holcombe Street.

   9.  When officers executed the search warrant, they discovered assorted paper

documents and identification in the name of "Corey Darnell Harvey" in a dresser in the back

bedroom. Upon locating the documents officers approached Harvey who was seated on the porch

of 576 Holcombe Street. Harvey was asked if he had a key  to the residence to which he replied in

the negative. Harvey was arrested, searched incident to arrest and on a keyring, found on his person,

was a key that fit the gold Chevrolet Caprice parked in the rear of 589 Holcombe Street.

   10.  Officers found and seized numerous plastic bags and shoe boxes filled with

cocaine base and marijuana, a set of keys which opened the front and rear door of 589 Holcombe

Street, assorted paper documents and identification  in the name of Harvey, digital scales, numerous

firearms and ammunition, disposable cameras, photographs, computers and electronic equipment,

plastic bags, rolls of masking tape, electric mixers, and assorted United States Currency totalling

approximately $5300.00.

11.     Harvey was read his rights pursuant to Miranda and gave a statement denying knowledge of and participation in any drug trafficking activity. Harvey further denied ownership or possession of the residence at 589 Holcombe Street.

12.     On November 16, 2006, a Federal Grand Jury, sitting in the Middle District of Alabama,  returned a three count Indictment charging Preston Grice and Corey Harvey with: (1) conspiracy to distribute and possession with intent to distribute more than 50 grams of cocaine base, a Schedule II Controlled Substance, more than 30 kilograms of marijuana, a Schedule I Controlled Substance, and a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, from an unknown date and continuing until November 1, 2005, in Montgomery County, within the Middle District of Alabama, in violation of Title 21, United States Code, Section 846; (2) distribution and possession with intent to distribute more than 50 grams of cocaine base, a Schedule II Controlled Substance, more than 30 kilograms of marijuana, a Schedule I Controlled Substance, and a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, from an unknown date and continuing until November 1, 2005, in Montgomery County, within the Middle District of Alabama, in violation of  Title 21, United States Code, Section 841(a)(1); and, (3) knowingly using, carrying and possessing firearms, named in the Indictment, during and in relation to, and in furtherance of, a drug trafficking crime for which they may be prosecuted in a court of the United States, to-wit: conspiracy to distribute and possess with intent to distribute and distribution and possession with intent to distribute as set out in Counts 1 and 2 of the Indictment, in Montgomery County, within the Middle District of Alabama, in violation of Title 18, United States Code, Section 924(c)(1)(A).

13.    On December 28, 2006, the defendant filed a Motion to Suppress based on violations of the Fourth and Fifth Amendments to the Constitution of the United States. Specifically, the defendant argues that: (1) the affidavit contained false information; (2) the affidavit did not establish probable cause; (3) the search warrant was overbroad because it authorized searches of persons and places for which probable cause did not exist and is constitutionally imprecise; and (4) the search warrant fails to adequately describe the premises to be searched.

**Legal Analysis**

STANDING

14.    The Fourth Amendment of the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." A party alleging an unconstitutional search under the Fourth Amendment must establish both a subjective and an objectively reasonable expectation of privacy in order to succeed. Katz v. United States, 389 U.S. 347 (1967). The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the "privacy expectation be one that society is prepared to recognize as reasonable." Katz, supra; United States v. Robinson, 62 F.3d 1325 (11th Cir. 1995). The defendant bears the burden of proving a legitimate expectation of privacy in the areas searched. United States v. Cooper, 133 F.3d 1394 (11th Cir. 1998).

15.    The fact that the defendant has a possessory interest in the things seized is not enough, in and of itself, to establish standing. United States v. Chavez, 169 F.3d 687 (11th Cir. 1999).

16.    Where a defendant in a motion to suppress fails to allege facts that if proved, would establish the defendant's standing to contest a search, the district court is not required to hold an

evidentiary hearing. United States v. Cooper, 203 F.3d 1279 (11th Cir. 2000).

SEARCH WARRANT - PARTICULARITY

17.    The Fourth Amendment limits the authorization to search to the specific areas and things for which there is probable cause to search. The requirement of particularity ensures that the search will be carefully tailored to its justification. Maryland  v. Garrison, 480 U.S. 79 (1987).

18.    When evaluating a warrant, it is enough if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended. United States v. Weinstein, 762 F.2d 1522 (11th Cir. 1985).

19.    It is not automatically fatal to a search warrant if the listed address is erroneous, if the description in the search warrant otherwise accurately describes the place to be searched. United States v. Burke, 784 F.2d 1090 (11th Cir. 1986). The searching agent's knowledge of which premises are supposed to be searched may also be considered. Id.

SEARCH WARRANT - PROBABLE CAUSE

20.    A court reviewing the issuance of a search warrant by a magistrate or state court judge is to decide whether the evidence viewed as a whole provided a "substantial basis" for the finding of probable cause at the time the warrant was issued,  Massachusetts v. Upton, 466 U.S. 727, 732-33 (1984) (per curiam); Illinois v. Gates, 462 U.S. 213, 236 (1983). The reviewing court must decide whether there was a "substantial basis" solely upon consideration of the information presented to the issuing judicial officer. United States v. Lockett, 674 F.2d 843 (11th Cir. 1982). In conducting such a review, the court must give deference to the decision of the issuing judge even in marginal or doubtful cases. Id. at 845.

21.    In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that

7

where the defendant makes a substantial preliminary showing that an affiant knowingly and intentionally included a false statement in an affidavit, or made the false statement with reckless disregard for its truth, and the false statement was necessary to the finding of probable cause, then constitutional mandate requires that a hearing be held at the defendant's request. However, insignificant and immaterial misrepresentations or omissions will not invalidate a warrant. United States v. Reid, 69 F.3d 1109 (11th Cir. 1995); United States v. Glinton, 154 F.3d 1245 (11th Cir. 1998).

22.    If the defendant shows that there are misrepresentations in a search warrant affidavit then the court must decide whether, not including the false information, there was still probable cause to search the location. United States v. Cross, 928 F.2d (11th Cir. 1991).

**Argument**

23.    In the present case, the defendant  has at no time established standing to attack the validity of the affidavit, search warrant or search relating to 589 Holcombe Street. Any statements made by the defendant were post Miranda and were denials of any knowledge of or participation in any drug trafficking activity. The search of the defendant's person was conducted pursuant to his arrest.

24.    The search warrant at issue speaks with particularity to the place to be searched and the items to be searched for. The place to be searched is described as a residence with no visible numbers located in the 500 block of Holcombe Street, Montgomery, Alabama, as being a white single story dwelling, located adjacent to two vacant lots at the corner of Holcombe and South Street, facing west on Holcombe Street.

25.    The affidavit establishes probable cause based upon the seizure of drug evidence

8

from the vehicle of Lee Woods, who officers had information on from a CS and who had been observed leaving 589 Holcombe Street with an object in his hands. Additional probable cause being that officers had seized a vehicle (the Escort) they had observed leaving 589 Holcombe and, after a traffic stop was attempted, had witnessed large amounts of marijuana being thrown from.

26.     The government concedes that the information in the affidavit identifying Preston Grice as the driver of the Escort was incorrect but argue that (1) the misinformation provided was not knowingly and intentionally placed in the affidavit, and (2) the misinformation does not, if removed, negate the probable cause of the drugs being thrown from the Escort after it left 589 Holcombe and does not negate the probable cause that Woods' stop and seizure establishes.

For the reasons stated above, the United States requests that this Honorable Court deny the defendant's Motion to Suppress.

Respectfully submitted this the 16th day of February, 2007.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334.223.7280
334.223.7135 fax
susan.redmond@usdoj.gov

9

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 2:06-CR-271-WKW |
| | ) | |
| COREY HARVEY | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following: Bruce Maddox.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135
susan.redmond@usdoj.gov